UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **FLOYD STANHOPE FRANCIS** | * | **CIVIL ACTION NO. 14-0168**<br>Section P |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **ERIC HOLDER, JR.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [doc. # 1] and an associated motion for preliminary injunction [doc. # 2] filed by Floyd Stanhope Francis ("Petitioner"). An evidentiary hearing was held in this matter on July 8, 2014. For reasons stated below, it is recommended that the motion for preliminary injunction be DENIED, and that the petition be DISMISSED.

## Background

Floyd Stanhope Francis is an immigration detainee who, since July 8, 2013, has resided in the custody of the Department of Homeland Security/Bureau of Immigration and Customs Enforcement (DHS/ICE). On November 8, 2013, Francis filed his initial petition for writ of habeas corpus before another division of this court. *See Francis v. Holder*, Civil Action No. 13-3040 (W.D. La.). On February 4, 2014, however, the court dismissed Francis's petition because he was subject to mandatory detention pursuant to § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). *Francis, supra* (Jan. 13, 2014, R&R [doc. # 13]; Feb. 4, 2014,

Judgment [doc. # 14]).[1] On February 3, 2014 – one day before the court dismissed his first petition – Francis filed the instant, second petition for habeas corpus.[2] He alleged that his removal proceedings ended and became final as of January 31, 2014. (Suppl. Brief, pg. 1 [doc. # 1]). Relying on *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), Francis argued that his continued detention violates his right to due process under the Fifth Amendment of the United States Constitution.

In light of the facts alleged by petitioner, the court ordered the government to file a response to the petition. (Feb. 24, 2014, Mem. Order [doc. # 3]). On March 20, 2014, the government so complied. (Gov.'t Response [doc. # 8]). Thereafter, petitioner filed a reply brief and requested oral argument. (Pet. Reply Brief [doc. # 9]). That same date, the undersigned granted petitioner's motion for oral argument, appointed counsel to represent him, and set the matter for evidentiary hearing to address the issues raised in the case. (April 4, 2014, Order [doc. # 10]). An evidentiary hearing was held on July 8, 2014. *See* Minutes [doc. # 25]. Petitioner, via counsel, filed a post-hearing brief on July 14, 2014. The matter is now before the court.

## Evidence and Testimony

Two witnesses testified at the hearing, both on behalf of the government: Lisa Fruge, a deportation officer with the DHS/ICE; and Margaret Johnson, a sergeant at the Tensas Parish Detention Center, Waterproof, Louisiana. The government introduced all ten exhibits that were accepted into evidence at the hearing. From the witness testimony and document exhibits, the undersigned finds as follows:

---

[1] The court also rejected Francis's constitutional challenge to § 236(c). *Id.*

[2] By this time, Francis was detained at the Tensas Parish Detention Center, Waterproof, Louisiana, awaiting removal to his native country, Jamaica.

1. Petitioner was born on March 27, 1981, to Donraye Francis and Una Barrett in Lionel Town, Jamaica.

2. Petitioner was admitted to the United States at Philadelphia, Pennsylvania on, or about April 25, 1991.

3. On March 16, 2004, petitioner was convicted of possession of cocaine in the 4th Judicial Circuit, Duval County, Florida.

4. On October 18, 2004, petitioner again was convicted of possession of cocaine in the 4th Judicial Circuit, Duval County, Florida.

5. On December 15, 2009, petitioner was convicted in the United States District Court for the Eastern District of Pennsylvania of possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g).

6. Because of his convictions, DHS advised petitioner that he was subject to removal from the United States and issued him a notice to appear on February 3, 2009.

7. On October 15, 2013, an immigration judge ordered petitioner's removal from the United States to Jamaica.

8. On October 29, 2013, Francis filed a petition for review with the United States Court of Appeals for the Fifth Circuit. *See Francis v. Holder*, Docket No. 13-60773 (5th Cir. 2013). On December 6, 2013, the Fifth Circuit dismissed the petition for lack of subject matter jurisdiction, and denied petitioner's motion for stay of deportation. *Id*.

9. On January 31, 2014, the Board of Immigration Appeals dismissed petitioner's appeal of the immigration judge's order of removal.

10. On February 11, 2014, Francis filed another petition for review with the United States Court of Appeals for the Fifth Circuit. *See Francis v. Holder*, Docket No. 14-600093 (5th Cir. 2014). On March 6, 2014, the Fifth Circuit dismissed the petition for lack of subject matter jurisdiction. *Id*. On April 17, 2014, the Fifth Circuit denied petitioner's motion for reconsideration en banc. *Id*. Francis filed a still-pending petition for writ of certiorari before the United States Supreme Court on June 6, 2014. *See Francis v. Holder*, Docket No. 13-10786 (2014).

11. On February 10, 2014, petitioner spoke with Mr. Vance Carter of the Consulate General of Jamaica, Miami. A travel document was not issued, however. Accordingly, DHS/ICE arranged a subsequent interview(s) with the Jamaican consulate.

12. On March 10, 2014, petitioner refused to speak with Jamaican consular officer Carter.

13. On April 2, 2014, petitioner again refused to speak with Mr. Carter.

## Law

Petitioner seeks *habeas corpus* relief pursuant to 28 U.S.C. § 2241, which provides in pertinent part that "[t]he writ of *habeas corpus* shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). The question therefore is whether petitioner's continued detention violates federal law.

As an initial matter, the court notes that Francis's removal order became final on January 31, 2014, when the Board of Immigration Appeals dismissed his appeal. *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (unpubl.) (citing 8 U.S.C. § 1101(a)(47)(B)); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). Thus, he presently is detained pursuant to 8 U.S.C. § 1231, which generally requires the Attorney General to remove him within 90 days, *inter alia*,[3] from the date that the order of removal became administratively final. *Andrade, supra* (citing 8 U.S.C. § 1231(a)(1)(B), (a)(1)(B)).

In certain circumstances, however, the removal period, and accompanying detention, may be extended. For instance, an alien who has been convicted *inter alia* of 1) a crime of moral turpitude for which a sentence greater than one year may be imposed, 2) multiple crimes of moral turpitude, or 3) an aggravated felony may be detained beyond the 90-day removal period. *See* 8 U.S.C. §§ 1231(a)(6) & 1227(a)(2).

If an alien is not removed during the 90 day removal period, then he shall be subject to

---

[3] The two other triggering circumstances are not present here.

supervision under regulations prescribed by the Attorney General requiring the alien, *inter alia*, to provide appropriate information. 8 U.S.C. § 1231(a)(3). Furthermore,

> [t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C).[4]

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-order detention statute implicitly limits an alien's detention to a period reasonably necessary to bring about that immigrant's removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court noted that the statute does not permit indefinite detention; the "reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id.* at 697-702. Under *Zadvydas*, it is presumptively constitutional for an alien to be detained for six months after a final order of removal. *Agyei-Kodie, supra.* Thus, any challenge to an alien's post removal order detention is premature until six months have lapsed from the date that the petitioner's removal order became administratively final. *Id*. (citation omitted).

After that six month period expires, *and the alien meets his or her initial burden of demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future*, then the government must furnish sufficient rebuttal evidence. *Id.* The mere expiration

---

[4] *See also Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993) ("[I]f it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about."); *Benn v. Bureau of Immigration and Customs Enforcement*, 82 Fed. Appx. 139, 140 (5th Cir. 2003) (alien's incomplete and conflicting statements to the INS hampered removal efforts and therefore extended the removal period); *Dumpeh v. Moore*, 2007 WL 3235099, *1 (W.D.Tex. Oct. 26, 2007) (citations omitted) ("An alien must cooperate in good faith in his removal.").

of the six-month detention period, however, does not, by itself, warrant release. As Justice Breyer put it,

> [a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701; *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

As stated earlier, however, if an alien acts to thwart DHS/ICE's efforts to remove him, then the removal period is suspended or tolled during such time. 8 U.S.C. § 1231(a)(1)(C). Indeed, § 1231(a)(1)(C) does not does not present the same constitutional concerns that motivated the decision in *Zadvydas* because, in contrast to § 1231(a)(6), under § 1231(a)(1)(C) the detainee himself is the cause of his continued detention. *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003). In other words, "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Id*.

## Analysis

Applying the foregoing principles to the facts at hand, the undersigned finds that petitioner has not been detained for at least six months post-final order of removal. Thus, his petition is premature. However, because his detention will ripen before entry of judgment in this matter, the court will proceed as if he had met the durational requirement.

Nevertheless, the court is compelled to find that petitioner did not meet his initial burden of demonstrating that there is no reasonable likelihood of removal in the reasonably foreseeable future. The court so concludes in no small part because petitioner did not introduce any evidence or testimony at all at the hearing. In any event, by refusing to speak to the Jamaican consular officer on at least two occasions, petitioner has acted to prevent his removal. As such, the removal period is suspended.

Petitioner argues that there is no evidence to establish that his refusal to speak to the consular officer is the present cause of the delay in his removal, because, after the one occasion that he *did* speak to the Jamaican consular officer, apparently no travel document was issued. However, the court can envision several benign explanations why petitioner was not removed from the country after his initial interview with the Jamaican consular officer. In fact, petitioner provided one such explanation earlier in this case: he represented to the court that he had been scheduled to be removed on February 27, 2014, but, instead, on that date, he was admitted to hospital for surgery. *See* Petitioner's Reply Brief and attached exhibits [doc. # 9].

Regardless, however, it is manifest that after the initial conversation in February, the Jamaican consular officer needed to speak with petitioner again. Petitioner refused, not once, but twice. There is no evidence that Jamaica is unwilling or unable to issue a travel document once the consulate is able to speak with him again and petitioner fully cooperates with the repatriation process. In the meantime, petitioner's ongoing failure to cooperate with DHS/ICE officials has suspended the removal period, and DHS/ICE may continue to detain him until such time as he begins to fully cooperate with its efforts to remove him.

Alternatively, even if this case were considered solely under *Zadvydas* irrespective of any statutory tolling of the removal period, the undersigned further finds that petitioner's refusal to cooperate in the removal process thwarts the requisite determination that there is no likelihood of his removal in the reasonably foreseeable future.[5]

## Conclusion

For the reasons discussed above, the undersigned finds that petitioner has hampered DHS/ICE's efforts to effect his removal and that such actions have has suspended or tolled the removal period. The undersigned further finds that there is no indication at this time that petitioner will not be removed to his country of origin when he decides to cooperate in the efforts to obtain a travel document. Accordingly,

IT IS RECOMMENDED that the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [doc. # 1] and associated motion for preliminary injunction [doc. # 2] filed by Floyd Stanhope Francis be DENIED and DISMISSED.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

[5] "Petitioner's cooperation with the removal process is relevant to the inquiry of whether there is a significant likelihood of removal in the reasonably foreseeable future." *Ayigba v. Young*, Civ. Action No. 06-2247, 2007 WL 2736678 at *6 (W.D. La. July 12, 2007) (citations omitted).

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 30th day of July 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE